Receipt number AUSFCC-11517077

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WILD ISLAND, INC.,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 26-1543 T |

## COMPLAINT

Plaintiff WILD ISLAND, INC. ("Plaintiff"), by and through undersigned counsel, files this Complaint against the United States of America, and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action under 26 U.S.C. § 7422 to recover overpaid federal employment taxes for the employment tax quarters ending June 30, 2020, and September 30, 2020, plus interest thereon as provided by law.

2. Plaintiff is entitled to these refunds under section 2301 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020), as amended by section 206 of the Taxpayer Certainty and Disaster Tax Relief Act ("Relief Act"), which was enacted as Division EE of the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182 (Dec. 27, 2020).

3. The CARES Act was signed into law on March 27, 2020, to provide direct economic assistance to American workers, families, small businesses, and industries in the face of the COVID-19 pandemic in the form of a refundable payroll tax credit called the "Employee Retention Credit," or "ERC."

4. The Employee Retention Credit is a refundable tax credit intended to encourage businesses to keep their workers employed during the pandemic in light of business-closing orders or significant declines to gross receipts.

5. Section 2301 of the CARES Act provided for the ERC to be issued to eligible employers on qualified wages paid to their employees. Pub. L. 116-136, § 2301.

6. Under Section 2301, as amended, if the amount of the credit exceeds the amount of Form 941 taxes for any applicable quarter, then the excess is treated as an overpayment and refunded to the employer.

7. Section 206 of the Relief Act adopted amendments and technical changes to section 2301 of the CARES Act for qualified wages paid after March 12, 2020, and before January 1, 2021, primarily expanding eligibility for certain employers to claim the credit.

8. Section 206 of the Relief Act removed the rule in section 2301(j) of the CARES Act that provided that an employer that received a Paycheck Protection Program ("PPP'') loan was ineligible for the credit.

9. In Section 206(e) of the Relief Act, Congress allowed taxpayers to claim the ERC credit for qualified wages paid in the second, third and fourth calendar quarters of 2020 as though such wages were paid in the fourth quarter of 2020 ("Special Fourth Quarter Rule").

10. Plaintiff filed Form 941-X utilizing the Special Fourth Quarter Rule claiming a refund of ERC credit relating to qualified wages for the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020.

11. The Internal Revenue Service ("IRS") considered Plaintiff's ERC refund claim for over three-and-a-half years before granting a refund of ERC credit in the amount of $315,631.84, relating solely to the fourth quarter qualified wages ending December 31, 2020, but disallowed the ERC credit of approximately $482,748.36 relating to the qualified wages paid in the second and third quarters of 2020 ending June 30, 2020, and September 30, 2020, respectively.

12. Plaintiff seeks a refund of ERC credit in the amount of approximately $90,669.12 relating to qualified wages paid during the period ending June 30, 2020, and approximately $392,079.24 relating to qualified wages paid during the period ending September 30, 2020.

13. In total, Plaintiff seeks a refund of ERC credit in the amount of approximately $482,748.36, plus interest thereon as provided by law.

//

## PARTIES

14. Plaintiff is a corporation formed under the laws of the State of Nevada. Plaintiff's principal place of business is in Sparks, Nevada.

15. Defendant is the United States of America.

## JURISDICTION AND VENUE

16. This action arises under 26 U.S.C. § 7422(a), which allows a plaintiff to bring an action to recover any Internal Revenue tax alleged to have been erroneously or illegally assessed or collected.

17. This action is proper under 26 U.S.C. § 6532(a)(1), which allows a plaintiff to bring a tax refund action in this Court before two years from the date shown on the IRS's notice disallowing the claim for refund.

18. Jurisdiction is proper under 28 U.S.C. §§ 1346(a)(1) and 1491(a)(1), which provide that the Court of Federal Claims shall have original jurisdiction over any civil action arising under any act of Congress providing for Internal Revenue and for the recovery of any Internal Revenue tax alleged to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the Internal Revenue laws.

//

//

**THE EMPLOYEE RETENTION CREDIT**

19. To qualify for the ERC, under Section 2301, as amended, a business must show that they are an “eligible employer” which is defined as any employer which was carrying on a trade or business during calendar year 2020 and satisfies one of three prongs for eligibility: (1) full or partial suspension of operations due to government orders; (2) declining gross receipts, or (3) recovery startup business. CARES Act § 2301(c)(2) (as amended).

20. As relevant to Plaintiff’s refund claim, Section 2301(c)(2)(B)(i) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts begins with the first calendar quarter beginning after December 31, 2019, for which gross receipts (within the meaning of section 448(c) of the Code) for the calendar quarter are less than 50 percent of gross receipts for the same calendar quarter in the prior year.

21. Section 2301(c)(2)(B)(ii) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts ends with the calendar quarter that follows the first calendar quarter beginning after a calendar quarter described in Section 2301(c)(2)(B)(i) of the CARES Act for which gross receipts of the employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year.

22. Section 2301(c)(3)(A)(ii) of the CARES Act defines, in pertinent part, "qualified wages" as wages paid to an employee by an eligible employer (i.e., an employer with 100 or fewer average full-time employees (within the meaning of 26 U.S.C. § 4980H) in 2019) with respect to wages paid to an employee during a quarter within the period the employer experienced a decline in gross receipts under Section 2301(c)(2)(A)(ii)(II).

23. Section 2301(a) of the CARES Act states that the credit amount is equal to 50 percent of qualified wages with respect to each employee for each applicable calendar quarter in 2020.

24. Section 2301(b)(1) of the CARES Act limits the amount of qualified wages that may be taken into account for calculating the credit to $10,000 per employee, which allows an eligible employer to claim a credit of up to $5,000 per employee for the relevant calendar quarters in 2020.

25. On December 27, 2020, Congress enacted Section 206 of the Relief Act to make specific "clarifications and technical improvements to CARES Act Employee Retention Credit."

26. Section 206(e)(2)(A) of the Relief Act provides a Special Rule that "an employer who has filed a return of tax with respect to applicable employment taxes (as defined in section 2301(c)(1) of division A of such Act) before the date of the enactment of this Act may elect (in such manner as the Secretary of the

Treasury (or the Secretary's delegate) shall prescribe) to treat any applicable amount as an amount paid in the calendar quarter which includes the date of the enactment of this Act [Dec. 27, 2020]."

27. Section 206(e)(2)(B) of the Relief Act defines the "applicable amount," in part, as the amount of wages "paid in the calendar quarter which includes the date of the enactment of this Act [Dec. 27, 2020]."

28. Section 206(e)(2)(B) of the Relief Act further defines the term "applicable amount," in pertinent part, as wages "paid in a calendar quarter beginning after December 31, 2019, and before October 1, 2020" and which were "not taken into account by the taxpayer in calculating the credit allowed under section 2301(a) of division A of such Act for such calendar quarter."

29. By enacting Section 206(e) of the Relief Act, Congress created the Special Fourth Quarter Rule that allowed taxpayers to claim the ERC credit for qualified wages paid during the second, third and fourth calendar quarters of 2020 on one consolidated refund claim as though all qualified wages were paid during the fourth quarter of 2020.

## STATEMENT OF FACTS

30. Plaintiff is in the trade or business of providing family focused amusement and recreation at its water park, bowling alley, and large arcade in Sparks, Nevada.

31. Plaintiff's business is seasonal with a large percentage of revenue derived from its operation of the water park during the warmer months between May and September.

**The Refund Claim**

32. On or about October 26, 2022, Plaintiff filed with the Department of the Treasury, Internal Revenue Service, Ogden, Utah, 84201-0005, Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, for the fourth calendar quarter of 2020, wherein pursuant to Section 206(e)(2)(A) of the Relief Act, Plaintiff elected to treat qualified wages paid in the second and third quarters of 2020 (in addition to wages paid in the fourth quarter) as paid in the fourth quarter of 2020 for purposes of the Employee Retention Credit.

33. On or about April 14, 2023, Plaintiff filed with the Department of the Treasury, Internal Revenue Service, Ogden, Utah, 84201-0005, a corrected Form 941-X ("Corrected Form 941-X"), Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, for the fourth calendar quarter of 2020, wherein pursuant to Section 206(e)(2)(A) of the Relief Act, Plaintiff elected to treat qualified wages paid in the second and third quarters of 2020 (in addition to wages paid in the fourth quarter) as paid in the fourth quarter of 2020 for purposes of the Employee Retention Credit. A copy of Plaintiff's Corrected Form 941-X, mailed

April 14, 2023, is attached as Exhibit 1. A copy of the statement required by Rule 9(m) of the Rules of the Court of Federal Claims is attached as Exhibit 2.

34. Plaintiff claimed on Line 27 of its Corrected Form 941-X a refund of the following amount for the employment tax quarter listed below:

a. $813,380.20 for the employment tax quarter ending December 31, 2020, pursuant to the Special Fourth Quarter Rule.

35. Plaintiff reported on Line 30 of its Corrected Form 941-X qualified wages in the following amounts for the employment tax quarters listed below:

a. qualified wages for the ERC of $1,626,760.40 for the employment tax quarter ending December 31, 2020, pursuant to the Special Fourth Quarter Rule;

36. During the examination by the IRS, Plaintiff submitted a revised calculation of qualified wages, decreasing the amount slightly from $1,626,760.40 to $1,606,760.40, among other small corrections, and revised the corresponding ERC credit to $798,381.09.

37. Throughout 2019, Plaintiff averaged fewer than 100 full-time equivalent employees (within the meaning of 26 U.S.C. § 4980H). For the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020, Plaintiff paid to its employees amounts treated as qualified wages.

38. Plaintiff, timely filed Forms 941, Employer's Quarterly Federal Tax Return, and timely paid all amounts due for each of the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020.

39. Plaintiff initially overreported applicable employment taxes on its Forms 941 for each of the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020, because Plaintiff did not claim the ERC for those employment tax quarters on its original Form 941 filings.

40. Plaintiff had previously received PPP Loan on or about April 2020, during the relevant ERC period. None of the qualified wages Plaintiff claimed for the ERC in the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020, were taken into account as payroll costs for forgiveness of Plaintiff's PPP Loan.

41. Plaintiff correctly calculated its qualified wages and the amount of its ERC credit for the employment tax quarter ending December 31, 2020, consistent with the Congressionally-created Special Fourth Quarter Rule, based on the qualified wages Plaintiff paid to its employees during the quarters ending June 30, 2020, September 30, 2020, and December 31, 2020.

//

//

**The IRS Examination**

42. On or about January 17, 2024, the IRS commenced an examination of Plaintiff's Corrected Form 941-X by issuing to Plaintiff Letter 6612 and Form 4564 (Information Document Request ("IDR")), hereinafter IDR no. 1.

43. On or about February 13, 2024, Plaintiff responded to IDR no. 1, and clarified a number of items associated with the Corrected Form 941-X. This included the following:

a. Documentation reflecting the "business experienced a 59% drop in Q2 of 2020 and subsequently had reductions of 25% and 42% in Q3 and Q4 of 2020 maintaining eligibility for all quarters."

b. Documentation (ERC Worksheets) and a clear description that, "It is important to note that the wages for the entire eligible period (4/1/2020-12/31/2020) are included in the spreadsheet and on the Q4 941-X that was filed. This is allowed per the Consolidated Appropriations Act Section 206(d)[.]" Plaintiff went on to quote the applicable language of the statute.

44. The IRS Revenue Agent examining the ERC claim never questioned or suggested there was any defect in the claim based on Plaintiff's consolidation of qualified wages, pursuant to the Congressionally-created Special Fourth Quarter Rule, of the second, third and fourth quarter of 2020 onto one Form 941-X.

45. The Revenue Agent examining Plaintiff's ERC claim never indicated Section 206(e) of the Relief Act did not permit taxpayers to consolidate the second, third and fourth quarter of 2020 onto one Form 941-X.

46. Plaintiff did not receive further correspondence until August 2024, when the IRS issued two Letters 3064C, requesting additional information.

47. On or about August 18, 2024, Plaintiff responded to the Revenue Agent's Letter 3064C by providing the additional requested documentation, including documentation showing a corrected "decline in revenue of 62% in Q2 2020, 74% in Q3 2020, and 39% in Q4 2020 was experienced."

**<u>Letter 105C Disallowing Claim</u>**

48. On or about October 16, 2024, while the examination was ongoing, the IRS abruptly issued Letter 105C stating they "disallowed your claims for credit for the tax periods listed at the top of this letter."

49. The sole basis for disallowing the credit was an allegation that Plaintiff "failed to substantiate entitlement to the ERC based upon a full or partial suspension of your trade or business due to a governmental order related to COVID-19. You have not provided a government order related to COVID-19 mandating actions be taken by your trade or business."

50. Plaintiff's ERC claim was not based on the full or partial suspension prong. As explained multiple times, Plaintiff's ERC claim was based on the decline-in-gross receipts prong.

**IRS Appeals**

51. On or about October 24, 2024, in response to IRS Letter 105C, Plaintiff submitted a timely Formal Written Protest ("Protest") and requested the matter be considered by the IRS Independent Office of Appeals ("Appeals").

52. Plaintiff's Protest explained that the matter was subject to an ongoing audit, and disputed the reason articulated in the Letter 105C (failure to substantiate a full or partial suspension of operates due to government order) for disallowing the ERC claim. Plaintiff explained they had "twice already, provided evidence of qualifying revenue declines for the periods in question[]" and attached the supporting documentation again to the Protest.

53. Plaintiff received a letter from Appeals Officer Christine Lazatin ("AO Lazatin"), dated March 21, 2025, indicating Appeals received the case for possible settlement.

54. One year later, for the first time on March 23, 2026, AO Lazatin, stated that, after consulting with her manager and senior AO, "regarding the calculation of the ERC credit, after reviewing the calculation, we've determined that the claim is incorrect because it attempts to bundle wages from multiple

quarters into a single Q4 filing on 941X. While Section 206(d) of the Consolidated Appropriations Act allowed a 'catch-up' provision, IRS Notice 2021-20 clarifies this was only permitted on the original Q4 2020 Form 941. It cannot be used now on an amended return (941-X), it needs to be separated for each quarter if using 941Xs[.]"

55. AO Lazatin ultimately agreed to an ERC credit in the amount of $315,632 representing only a portion of the total requested $798,381.09 ERC credit on qualifying wages of $1,606,760.40 paid during the second, third, and fourth calendar quarters of 2020.

56. The credit of $315,632 represents the amount of ERC credit allocated solely to the qualifying wages paid between October 1 and December 31, 2020.

57. AO Lazatin disallowed the remaining ERC credit amount of $482,748.36 included in the refund claim – Corrected Form 941-X filed pursuant to the Congressionally-created Special Fourth Quarter Rule – on the basis that "[w]hile Section 206(d) of the Consolidated Appropriations Act allowed a 'catch-up' provision, IRS Notice 2021-20 clarifies this was only permitted on the original Q4 2020 Form 941."

58. AO Lazatin stated, "I want to sincerely apologize for low long this process has taken. Because our primary focus was on verifying your eligibility, this

specific filing error was only recently discovered. I regret that this oversight didn't come to light sooner in the review process."

59. The IRS's new basis for disallowing Plaintiff's ERC claim, which was first articulated by AO Lazatin on March 23, 2026, is without merit as Plaintiff followed the Congressionally-created Special Fourth Quarter Rule.

**COUNT ONE – CLAIM FOR REFUND**

60. Plaintiff incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

61. The IRS issued a notice of disallowance by Letter 105C dated October 16, 2024, wherein the IRS erroneously disallowed Plaintiff's ERC refund claim based on an alleged failure to substantiate entitlement to the ERC based upon a full or partial suspension of Plaintiff's trade or business due to a governmental order related to COVID-19.

62. Plaintiff is an eligible employer for the ERC for the calendar quarters ending June 30, 2020, September 30, 2020, and December 31, 2020. Plaintiff satisfies the first requirement for eligibility because Plaintiff was engaged in the trade or business of providing family focused amusement and recreation at its water park, bowling alley, and large arcade in Sparks, Nevada.

63. Plaintiff satisfies the decline-in-gross receipts prong for eligibility for the period ending June 30, 2020, because Plaintiff's business experienced a decline

in revenue of 62% in Q2 2020, which is satisfied where the employer shows that gross receipts were less than 50 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019.

64. Since ERC eligibility under the significant decline-in-gross receipts does not end until the first quarter that follows the first quarter for which the employer's 2020 gross receipts for the quarter are greater than 80% of its gross receipts for the same quarter during 2019, Plaintiff satisfies the decline-in-gross receipts prong for eligibility for the periods ending September 30, 2020 and December 31, 2020, because Plaintiff's business continued to experience a decline in revenue of 74% in Q3 2020, and 39% in Q4 2020.

65. The amount of qualified wages an eligible employer may take into account with respect to any employee for any calendar quarter in 2020 shall not exceed $10,000. This means that for each calendar quarter in 2020, an eligible employer may claim a credit of up to $5,000 for each employee.

66. As an "eligible employer", Plaintiff is allowed the ERC against applicable employment taxes for each calendar quarter of 2020 in an amount equal to 50 percent of the qualified wages paid with respect to each employee of such employer for such calendar quarters in 2020.

67. Plaintiff paid qualified wages for each of the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020. During 2019,

Plaintiff employed fewer than 100 full-time employees (within the meaning of 26 U.S.C. § 4980H). Thus, the qualified wages paid by Plaintiff for the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020, consist of all wages paid with respect to these calendar quarters.

68. Plaintiff previously paid all applicable employment taxes for the employment tax quarters ending June 30, 2020, September 30, 2020, and December 31, 2020.

69. The amount of the credit exceeds the Plaintiff's applicable employment taxes for the calendar quarters; therefore, the excess is treated as an overpayment that shall be refunded under 26 U.S.C. §§ 6402(a) and 6413(b).

70. Plaintiff is entitled to a refund in the amount of at least $482,748.36, plus interest thereon according to law, based on the qualified wages paid by Plaintiff for the employment tax quarters ending June 30, 2020, and September 30, 2020.

71. Plaintiff is and at all relevant times has been the sole owner of this timely claim for refund and has made no transfer or assignment of such claim. No suit or other process by Plaintiffs is pending on the refund claim in any other court.

//

//

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant, the United States of America, as follows:

i. That Plaintiff be refunded the sum of $482,748.36, or such greater amount as this Court may determine to be legally refundable, together with statutory interest thereon as provided by law, for Plaintiff's ERC claim for refund.

ii. That this Court award Plaintiff costs, including attorney's fees, and such other and further relief as this Court deems just and proper.

Date: October 14, 2026

Respectfully submitted,

/s/ *Andrew D. Allen*

Andrew D. Allen (CA SBN 269502)
ALLEN TAX LAW, APC
750 Menlo Avenue, Suite 320
Menlo Park, CA 94025
Phone: (650) 474-1854
Fax: (650) 648-0962
drew@allentaxlaw.com

*Attorney for Plaintiff*